## OLSEN v. HAYDEN HOLDING CO.

No. 5867.   Decided July 17, 1937.   (70 P. [2d] 463.)

Rehearing Denied November 15, 1937.

*S. D. Huffaker* and *J. E. Pixton*, both of Salt Lake City, for appellant.

*A. W. Watson*, of Salt Lake City, for respondent.

LARSON, Justice.

From a judgment of $462 for personal injuries, entered in the district court of Salt Lake county in favor of the plaintiff, defendant prosecutes this appeal. Defendant was the owner and engaged in the operation of an apartment house in Salt Lake City; plaintiff was a tenant of defendant, occupying an apartment on the basement floor. On May 17, 1935, at about 5 o'clock p. m. plaintiff, while going to her apartment from the lobby of the apartment house, fell on the stairway leading to the basement floor and was injured. In her complaint she alleged negligence of defendant in failing to maintain a proper system of lighting in the hall and stairway on the date of the accident. The relationship of landlord and tenant is admitted, and no question is raised as to plaintiff having met with the accident

alleged, or the extent of her injuries. Three questions only are presented by the record: (1) Did the city ordinance pleaded by plaintiff apply to the apartment house where the accident occurred? (2) Was there sufficient evidence of defendant's negligence to take the case to the jury? (3) Does the evidence conclusively establish contributory negligence on the part of the plaintiff? We shall discuss these questions in order.

Plaintiff pleaded section 3306 of the ordinance in haec verba and defendant's duty under the section. Defendant in its answer admitted the existence and validity of the ordinance, but alleged it did not apply to the building in question. Plaintiff did not offer the ordinance in evidence, but defendant put the whole ordinance into the record. Section 3306 reads:

"Every stairway or other means of exit into corridors and passageways appurtenant thereto shall be provided with an adequate system of lighting, either natural or artificial. Lights in the exit signs shall be kept burning at all times that the building served by such stairways or exits is being used or occupied."

Other sections material to the question here presented are set forth:

Section 102. "The purpose of this Code is to provide certain minimum standards, provisions and requirements for safe and stable design, methods of construction and uses of materials in buildings and/or structures hereafter erected, constructed, enlarged, altered, repaired, moved, converted to other uses or demolished and to regulate the equipment, maintenance, use and occupancy of all buildings and/or structures.

"The provisions of this Code shall be deemed to supplement any and all state laws of the State of Utah relating to buildings."

Section 103. "New buildings and/or structures hereafter erected in Salt Lake City, shall conform to all requirements of this Code; and all requirements in this Code, unless specifically provided, shall apply to new buildings.

"Additions, alterations, repairs and changes to the use of occupancy in all buildings shall comply with the requirements for new buildings except as otherwise provided in Sec. 104 of this Code."

Section 105. "The requirements contained in this Code, covering the maintenance of buildings, shall apply to all buildings and/or

structures now existing or hereafter erected. All buildings and/or structures and all parts thereof shall be maintained in a safe condition, and all devices or safeguards which are required by this Code at the erection, alteration or repair of any building shall be maintained in good working order.

"This section shall not be construed as permitting the removal or non-maintenance of any existing devices or safeguards unless authorized in writing by the Building Inspector."

Section 305. "It shall be unlawful for any person, firm or corporation to erect, construct, enlarge, alter, repair, move, remove, demolish, convert, equip, use or occupy or maintain any building and/or structure or any portion of any building and/or structure in Salt Lake City, contrary to or in violation of any provision of this Code or to cause, permit or suffer the same to be done."

Defendant's contention is that section 3306 of the ordinance applies only to new buildings, erected after passage of the ordinance in 1933, while the apartment house in question was erected at some time prior to 1922. The applicability of the ordinance must be determined either from the wording of the ordinance itself; or from the purpose and objective with which the ordinance was ordained and declared; or from a consideration of both. The ordinance itself declares its purpose is to provide minimum standards governing alteration of buildings or the construction of new buildings, and "to regulate the equipment, maintenance, etc. of all buildings." Section 102, supra. Note the use of the inclusive "all buildings" with respect to regulating the equipment, maintenance, and use, as distinguished from the expression "hereafter erected" with respect to the construction or alteration of buildings. And in section 105, supra, note that the "requirements contained in this Code covering maintenance shall apply to all buildings now existing or hereafter erected" and that "all buildings shall be maintained in a safe condition." And in section 305, on penalties, "It shall be unlawful for any person, etc, to erect * * * or maintain any building contrary to or in violation of any provision of this Code." We cannot assume that the use of all inclusive terms in the provisions with respect

to maintenance, as distinguished from the expression "hereafter erected" with respect to constructions, occurring regularly throughout the ordinance was a mere coincidence rather than an intentional design to make the safety features of maintenance applicable to the protection of all citizens alike in any apartment house licensed to do business within the city. The purpose of the requirements we are considering was obviously to safeguard the occupants of apartment houses, and others having lawful occasion to traverse the halls and stairways within them and to assure them a safe passage; and it would fall far short of that purpose if construed to apply only to new buildings thereafter erected, and set up different standards of care required or liability imposed, in maintaining such stairways, based upon the single element of time of construction. Especially is this true where, as here, the requirement of light may be met with negligible expense, and independent of the manner or method of the construction of the building.

A very similar case is presented in *City of Seattle* v. *Hinckley*, 40 Wash. 468, 82 P. 747, 748, 2 L. R. A. (N. S.) 398, where the city ordinance provided,

"That all hotels, office buildings, factories, tenements, and lodging houses more than three stories in height shall have at the ends of each main hallway  *  *  *  a fireproof stairway" etc.

Justice Dunbar, in an excellent opinion says:

"The contention of the respondent is that the ordinance was not retrospective in its scope, and that the city council did not intend in its passage that houses erected before the passage of the ordinance should be subject to its provisions; that it was not intended to interfere with fire escapes then existing, and that, if such ordinance should be so construed, it would be unconstitutional, as depriving respondent of existing rights. The trial court took this view, and the respondent was acquitted and discharged from custody. We think the court erred in its construction of this ordinance. It may be conceded that the fundamental rule of construction of statutes is that they shall not be construed to be retrospective unless the retrospective intention is expressed or can be plainly gathered from the provi-

sions of the act. But it seems to us that the language of this ordinance is plain and unequivocal. When it is said that all hotels, office buildings, factories, tenements, and lodging houses more than three stories in height shall have a certain described fire escape, it seems to us it was the plain intention of the city council that all buildings described should have such appurtenances, and that, if it had been the intention to except any buildings from its provisions; such exception would have been expressed. The language is as broad and comprehensive as could well have been used. In reason, too, it would seem that if the city council, from observation or investigation, had determined that a certain character of fire escape was necessary for the preservation of people inhabiting certain classes of houses, it would be as important in the interest of the safety of the inhabitants of such houses to apply the rule to houses already built as to those thereafter built. There can be no doubt as to the constitutionality of this act under this construction.

"And there is no merit in the contention that the respondent had any inherent or vested right because he had complied with the law existing at the time he built. There is no such thing as an inherent or vested right to imperil the health or impair the safety of the community. But, to be protected against such impairment or imperilment, is the universally recognized right of the community in all civilized governments; a protection which the government not only has a right to vouchsafe to the citizens, but which it is its duty to extend in the exercise of its police power. When the subject of legislation is a proper subject of such exercise, as in this case it undoubtedly is, private rights are always held subservient to the public weal, and the Legislature must be the judge of the propriety or extent of the remedy. The object of this ordinance was to protect persons from fire; and, while it is agreed that the fire escape already existing was in working order, it is also stipulated that it was not as convenient or safe for use as the stairway provided for by the ordinance. The people have a right to the safest method that can be found and determined by the Legislature. Conditions in cities in relation to buildings are constantly changing. Dangers from fire are increasing by reason of the change in the construction of buildings, and for many other reasons which might be conceived. In addition to this, mechanical science is making known safeguards, apparatus, and methods of extinguishing fires which were not known before. Theaters and other public buildings are built with certain kinds and characters of fire escapes, which in emergencies are found to be faulty and not the best that could be used. It would be a sad commentary on the law, if municipalities were powerless to compel the adoption of the best methods for protecting life in such cases

simply because the confessedly faulty method in use was the method provided by law at the time of its construction. The changing of fire escapes is only an incident in the expense of the construction or repair of a building." *Commonwealth* v. *Roberts*, 155 Mass. 281, 29 N. E. 522, 16 L. R. A. 400.

Defendant's contention that section 3306 of the ordinance pleaded did not apply to the building involved in this action, as to the maintenance provisions with respect to lights in hallways and on stairs, is untenable.

Appellant's next point is that there is not sufficient evidence of defendant's negligence to take the case to the jury. The negligence charged to defendant is based solely upon its alleged failure to maintain an adequate system of lights on the stairway, as required by the ordinance. ▪ This issue has never been passed upon by this court, but in other jurisdictions the cases hold that where a landlord does not comply with an ordinance requiring a proper lighting of stairs and hallways, it constitutes evidence of such negligence on his part as to take the case to the jury in actions by a tenant for personal injuries received in falling down a stairway due to its not being properly lighted. The Supreme Court of Missouri in *McGinley* v. *Alliance Trust Co.*, 168 Mo. 257, 66 S. W. 153, 56 L. R. A. 334, declared that whenever the owner of a house demises a portion of it to which access is had by way of halls or stairways used in common with tenants of other portions of the same premises, the owner by such transaction, retains as to the tenants the possession and control of the undemised facilities, and it is his duty to keep them, or to use reasonable care to keep them, in safe condition for the use of the tenant in the enjoyment of his own possession. Cited with approval in *Turner* v. *Ragan* (Mo. Sup.) 229 S. W. 809, and *Roman* v. *King*, 289 Mo. 641, 233 S. W. 161, 25 A. L. R. 1263. In *Zeininger* v. *Preble*, 173 Wis. 243, 180 N. W. 844, it was held that under a statute which provides that every owner of a place of employment or public building now or hereafter constructed shall so construct and maintain the same as to

render it safe, a landlord is liable to a tenant for injuries received in a common passageway of a building occupied by several tenants, and this without reference to his common-law liability. Where a landlord does not comply with a provision of the statute requiring the keeping of lights burning in hallways, it constitutes evidence of such negligence on his part as to take the case to the jury in an action by a tenant for personal injuries received in falling down a stairway, due to the poorly lighted condition of the hall and stairway. *Mustavoi* v. *St. John the Baptist Foundation* (Sup.) 158 N. Y. S. 717; *Brown* v. *Wittner*, 43 App. Div. 135, 59 N. Y. S. 385; *Kargman* v. *Carlo*, 85 N. J. Law, 632, 90 A. 292; *Rhodes* v. *Fuller Land & Improvement Co.*, 92 N. J. Law, 569, 106 A. 400; *Gutowski* v. *Goldberg*, 153 A. 375, 9 N. J. Misc. 317. The same rule applies where an ordinance is involved. *Roth* v. *Trakas*, 36 Ohio App. 136, 172 N. E. 847; *Tyler* v. *Vistula Realty Co.*, 31 Ohio App. 1, 166 N. E. 240; *McGoldrick* v. *Kuebler*, 36 Ohio App. 380, 172 N. E. 679; *McGinnis* v. *Keylon*, 135 Wash. 588, 238 P. 631, and extended note following case in 25 A. L. R. 1263; also in 75 A. L. R. 148.

The clear weight of authority and also the better reasoned cases hold that proof of failure by the landlord to comply with the provisions of an ordinance such as here involved is evidence of negligence sufficient to take the case to the jury.

Is there evidence of a failure on the part of defendant to comply with the provision of the ordinance with respect to lights in this stairway? The apartment house is situate on the west side of the street, the front entrance is into a lobby, the front or east side of which has large windows; the stairway in question leads from the west or rear of the lobby, down three steps, then turns south with three steps, narrow at the south and east, or inner end of the turn and wider at the north and west, or outer end; then six steps leading down the passageway southward to basement floor. Just beyond the foot of the stairway a hall leads off to the west, and in this hall, two to four feet from the

point of junction of the two hallways, is a light. The only light for the stairway was reflected by this light, and the lights in the lobby.

The plaintiff testified that the stairway was dark; that there were no lights on the stairway; that in the forenoon it was lighted fairly by the sunlight from the front (or east) windows of the lobby, but in the afternoon when the sun did not shine in so well from the windows the stairway was quite dark; the only light on the lower stairs was reflected from a light around a corner where the hallway turned; that at night when the big lights were on in the lobby, the stairway was fairly well lighted up thereby; that on the afternoon in question she went down though the stairs were darkened because she had no flash light with which to see; that the conditions were the same this day as they had been since she rented apartment 8. Florence Chedester, a witness for plaintiff, testified that at the time of the accident she was working for appellant in the capacity of landlady at the apartments where the accident occurred; that there were no lights on the stairway; that in the afternoon it was much darker; that there was no light except what came through the front windows of the lobby, or was reflected from around the corner in the lower hall; that she called the attention of the officer of appellant to the need of a light in the stairway; that he replied they used to have a light, but could not keep a globe in it; that other tenants had complained to her about the darkened condition of the stairway; that she had difficulty showing prospective tenants the basement apartments, because they noticed the darkened condition of the stairway and objected to going down until they got their bearings.

Appellant produced witnesses who testified that the stairway was not dark; that it was light enough for safety and they had no trouble going up and down. There was thus a direct conflict in the evidence as to the condition of the lights on the stairway which raised a question of fact for submission to the jury, as to whether defendant maintained

on the day of the accident "an adequate system of lighting" as required by the ordinance, and if not, whether such failure was the proximate cause of the plaintiff falling down the stairway. *Taylor* v. *Bamberger Electric Ry. Co.,* 62 Utah 552, 220 P. 695; *Green* v. *Higbee,* 66 Utah 539, 244 P. 906; *Nelson* v. *Lott,* 81 Utah 265, 17 P. (2d) 272.

The remaining question is: Does the record conclusively show contributory negligence on the part of the plaintiff so as to bar a recovery? There was no plea of contributory negligence. Defendant did not plead contributory negligence on the part of plaintiff, and relies upon the circumstances under which the accident occurred and certain statements made by plaintiff on the witness stand to sustain its contention. No complaint is made with respect to the instructions given or refused on this phase of the case. Plaintiff testified that she used due care and caution in going down the stairs and the evidence presents such an issue as was proper to submit to the jury. The contention that plaintiff's contributory negligence is conclusively established because she went upon the darkened stairway knowing its condition as to lights, it having been no better lighted for several weeks, and since she did not provide herself with some further light, she cannot, as a matter of law, recover, is against the weight of authority and the better reasoning. The better rule seems to be that where the stairway was one the tenant would reasonably use in going to and from her apartment, and its unsafe, dangerous, or defective condition was known to her, it merely imposed upon her the duty of using due care to avoid the danger, and whether or not, at the time of the accident, the tenant used due care is a question of fact for the jury.

We quote from annotations in the case of *Roman* v. *King,* 25 A. L. R. 1263:

Page 1335. "Where there is evidence that the injured person, a tenant of an apartment, was proceeding carefully through a poorly lighted hallway of the apartment when the accident occurred, the

question of her contributory negligence is one for the jury. *Mustavoi v. St. John the Baptist Foundation* (Sup. 1916) 158 N. Y. S. 717."

Page 1336. "In *Heinberg* v. *Sikora Realty Corporation* (1920) 110 Misc. 323, 180 N. Y. S. [405] 406, it is held that it is not contributory negligence, as a matter of law, for a tenant to make use of a stairway while it is in a darkened condition, due to the violation by the landlord of the statutory requirement to keep such hallways and stairs lighted."

Pages 1337, 1338. "Where an employee used a stairway reserved for the use of tenants in common, at a time when it was dark, due to a dark day, and she knew that the electric lamps were not then lighted, but it was nevertheless necessary for her to use the stairway at the time, she having been forbidden to use the elevator by the landlord's employee, who operated it, and she testified that she had hold of a handrail until she fell at the first turn, where the steps were wider at the left than at the right, it was held that the issue of due care was properly submitted to the jury. *Maran* v. *Peabody* (1917) 228 Mass. 432, 117 N. E. 847.

"And in *Hicks* v. *Smith* (1913) 158 App. Div. 299, 143 N. Y. S. 136, it was held that where a guest knew of the littered and obstructed condition of the hallway and stairway, it is a question for the jury whether or not she was negligent in attempting to use it without a light when it was dark.

"Likewise, in *Lee* v. *Ingraham* (1905) 106 App. Div. 167, 94 N. Y. S. 284, the tenant's negligence was held to be a question of fact, where she descended a stairway at night when the hall was not lighted, with knowledge that the carpeting on the stairway was in a defective condition; the court said * * * it was proper to leave the same to the jury, which was justified in finding her free of contributory negligence.

"It is also held in *Brennan* v. *Lachat* (1886) 5 N. Y. St. Rep. 882, that a tenant is not necessarily guilty of contributory negligence in using an unlighted stairway, known to her to be out of repair. In this case the trial judge instructed the jury that if they found that the use of the stairway by the plaintiff, with knowledge of the dangerous condition, was negligence which contributed to her injury, they were to find for the defendant. This was said to be a full and fair statement of the law, and was all that the defendant had a right to ask or expect.

"In *Kenney* v. *Rhinelander* (1898) 28 App. Div. 246, 50 N. Y. S. 1088, affirmed without opinion in (1900) 163 N. Y. 576, 57 N. E. 1114, it is held not to be a question of law for the court, but a question of fact for the jury, as to whether or not a tenant was guilty of con-

tributory negligence in using an unlighted hallway at night without carrying a light, where he knew that there was a defective carpet on the stairway. Upon this point the court said that it could not 'adopt as a fixed rule that it is in and of itself contributory negligence for a person to use a stairway under such circumstances, without providing himself with a light. Whether or not it was his own negligence in doing so is a question that must be left to the jury under all the circumstances of the case, for it is obvious that no general rule can be applied to such a situation. The most that can be required would be to hold that he must exercise great care, and the trial judge so charged in this case.'" See, also, *Marwedel* v. *Cook*, 154 Mass. 235, 28 N. E. 140; *Gallagher* v. *Murphy*, 221 Mass. 363, 108 N. E. 1081, Ann. Cas. 1917E, 594; *Rhodes* v. *Fuller Land & Imp. Co.*, 92 N. J. Law, 569, 106 A. 400.

This question of contributory negligence being a proper matter for a jury, and the fact being found in favor of plaintiff, we cannot disturb that finding.

There being no reversible error in the record the judgment appealed from is affirmed. Costs to respondent.

FOLLAND, C. J., and EPHRAIM HANSON, J., concur.

WOLFE, Justice (dissenting).

I dissent. The opinion in this case may correctly state the law as to the application of section 3306, Revised Ordinance, to the defendant's apartment house but the complaint does not allege as the basis for the cause of action a failure to maintain a proper lighting system in the hall and stairway as required by section 3306. The complaint alleges that there was a failure to keep the system lighted. As an extra defense, defendant, after plaintiff pleaded the ordinance, contended that the ordinance did not apply to its apartment house but the plaintiff could not recover unless she proved her allegations, to wit, that the lights were, at the time of the accident, extinguished. That is her only allegation of negligence. She cannot transmute it into an allegation that the lighting system was not as required by the ordinance. The pleading of the ordinance was only to show a duty named

by the ordinance to keep proper light in the hallways and it is a breach of that duty by the alleged failure to have any lights going and not the failure to maintain an adequate lighting system which is the sole ground of negligence. The complaint alleges in paragraph 4

"that on the 17th day of May, 1935, at about the hour of 5 o'clock p. m. * * * said defendant had carelessly and negligently, and contrary to its duty and to the provisions of Section 3306 of said ordinance of Salt Lake City as aforesaid, permitted all lights on the stairways and hallways in said apartment house to be extinguished, thus failing to provide said hallways and stairways with adequate light for this plaintiff or other persons using the apartment house to properly see the stairways and had carelessly and negligently ordered and required the person in charge of said apartment house for the said defendant to see that said lights were not turned on in the hallways and stairways, and that the plaintiff, while descending the stairway between the main floor and the basement floor of said apartment house, because of her inability to see the steps and the position of the steps on said stairway while descending said stairway as aforesaid, did miss one of the steps of said stairway and was then and there made to fall and she did fall from said step to the landing below the same and by reason thereof plaintiff received a severe injury to the back of her head causing," etc.

In paragraph 2 the complaint alleged that prior to the 17th of May all of the halls and stairways were lighted by

"the use of certain electrical lights and appliances and said halls and stairways were lighted in such a manner that the tenants and occupants of the various apartments in said apartment house were able to traverse the various stairs and halls therein without danger of falling, and that such was the condition of said halls and stairways at the time this plaintiff rented from the defendant the aforesaid apartment; and plaintiff alleges that it was the duty of said defendant in the conduct of its said apartment house and apartment house business to at all times keep the halls and stairways of said apartment house lighted to the same extent as the same were lighted at the time the plaintiff became a tenant of said apartment house."

In paragraph 3 it is alleged that there was in force on May 17th a certain ordinance reading as follows:

"Every stairway or other means of exit into corridors and passage ways appurtenant thereto shall be provided with an adequate system of lighting, either natural or artificial. Lights in the exit sign shall be kept burning at all times that the building served by such stairways or exits is being used or occupied."

Then follows an allegation reading as follows:

"Plaintiff alleges that it was the duty of said defendant to keep said hallways and stairways lighted as aforesaid and as required by said city ordinance so that the same would be properly lighted at all times so that this plaintiff and other occupants of said apartment house could with safety use the halls and stairways of said apartment house."

These allegations cover all the particulars as to negligence. The remainder of the complaint deals with injuries suffered and matters of inducement.

The evidence developed the fact that the lights were lit, whereupon plaintiff sought to switch to the ground that the lighting system, even though kept lit, was not adequate under the ordinances. But no such ground was alleged. An allegation that a system of lights was not left lighted as required by the ordinance is not sustained by proof that the system itself was not as required by the ordinance. The sole negligence mentioned is a failure to have any lights whatsoever, and when this ground was abandoned none remained that was pleaded. The pleading of the ordinance requiring an adequate system of lighting, either natural or artificial, was itself not a plea of negligence. It was put in the complaint to show that an ordinance had been violated by having no lights. There was no allegation that there was a breach of the ordinance in that the system of lighting was inadequate. Defendant did not need to meet any other allegation of negligence except the one alleged, to wit, that the lights on May 17th were altogether extinguished. If an ordinance requires me to have an adequate system of lighting and it is admitted I had a proper system, but that it was not lighted, such allegation cannot cover a case where

it turns out in the evidence that the system was lighted but it was not an adequate system. It is a truism that proof must follow allegation.

In this case, the attorney for the plaintiff stated to the court that he was "not relying on Paragraph 2. We have abandoned that particular allegation and have not attempted to make any proof on it. We are making proof under Paragraphs 3 and 4 of the complaint." But that did not aid him, because as shown above, paragraphs 3 and 4 simply set out a duty prescribed by an ordinance and then alleged a breach of that duty by alleging no lights burning. Under paragraphs 3 and 4, the plaintiff could not show that there were lights burning, but they were not sufficient or so located as not to adequately light the hall. His allegation was equivalent to an admission that there was an adequate lighting system, but that it was not in commission.

The fact that after he stated that he was abandoning the allegation in paragraph 2 and relying on paragraphs 3 and 4 (but still had not made his proof conform to the allegations of those paragraphs), defendant did not object or call the court's attention to the variance, cannot cure the error of failing to prove the only allegation of negligence set out. No proof relating to negligence was introduced after that incident, but only as to Mr. Olsen's condition after which plaintiff rested and defendant moved for a nonsuit which, in my opinion, should have been granted. The fact that defendant itself introduced the whole ordinance cannot change the situation. It had a right to defend not only on the ground that the allegation of negligence had not been proved, but also on the point that the duty purported to be required by the ordinance was not as it was claimed and to introduce the ordinance in support of that theory. The fact that it was compelled to go ahead after the nonsuit and in so going ahead it met the evidence of plaintiff to the effect that there was not an adequate lighting system by attempting to show there was adequate light, would not waive the very fundamental requirement that plaintiff must

prove the allegation of negligence in the complaint and not some other negligence not set out. By the court's overruling defendant's motion for a nonsuit, defendant was put to the choice of standing on that motion or meeting what evidence had been introduced even though it did not support the allegation of negligence. The defendant assigned as error the court's refusing to grant the motion for a nonsuit, and the same was argued in the briefs.

While there may be cases where both sides depart from the pleadings and voluntarily make issues which are not included therein which would estop either from asserting that the other had not followed allegata with probata, I do not think this is one of those cases. The defendant brought the issue fairly before the court by its motion for a nonsuit. Overruling it placed upon it the responsibility of going forward to meet the only evidence which was adduced. In so doing, it did not make or accept an issue without the pleadings.

For these reasons, I dissent.

MOFFAT, Justice (dissenting).

I concur in the dissenting opinion of Mr. Justice WOLFE. It may also be doubted whether plaintiff, after abandoning paragraph 2 of her complaint, alleged sufficient to show that her injury was caused because of the light of the stairway being turned off, or being insufficient or inadequate, or whether her inability to see the steps resulted from some other cause such as a sudden coming from a brighter lighted place to a less brilliantly lighted one, from misplacement of the light, or a defect of vision or otherwise. It is alleged only that "because of her inability to see the steps and the position of the steps on said stairway" plaintiff did miss one of the steps and fell. The steps in so far as allegation is presented might have been adequately lighted. Under the state of the evidence and the allegations considered at the time the motion for a nonsuit was interposed, the motion should have been granted.