## BROOKS v. UTAH HOTEL CO.

No. 6801.   Decided May 24, 1945.   (159 P. 2d 127.)

See 43 C. J. S., Innkeepers, sec. 23; Innkeeper's liability for injury to guest due to condition of plumbing, note, 118 A. L. R., 1103. See, also, 28 Am. Jur., 581.

*Irvine, Skeen & Thurman* and *Earl Jay Groth,* all of Salt Lake City, for appellant.

*L. B. Wight* and *Willard Hanson,* both of Salt Lake City, for respondent.

LARSON, Chief Justice.

Appeal from judgment of the District Court of Salt Lake

County awarding plaintiff damages in the amount of $1972.50.

Plaintiff, a paying guest at defendant's hotel, was bathing in a tub furnished by defendant for her use. The tub had a single faucet from which came water, hot or cold or mixed, depending upon the way in which the handles were turned. After washing herself, plaintiff drained the water and prepared to take a cool rinse. Sitting in the tub, she turned on the cold water, and finding it too cool for comfort, she turned on the hot water tap. According to her testimony, steam gushed out of the faucet, burning her arm. In an effort to get out of the tub she threw her feet over the edge, but as there was no hand hold she was obliged to pull herself closer to the faucet and grasp that to enable her to get out. As a result of this accident, plaintiff suffered, first, second and third degree burns on her back, hips, both arms and the left wrist and was hospitalized for approximately a month and a half. The jury returned a verdict in favor of plaintiff in the amount of $1625 general damages and $347.50 special damages. From judgment on this verdict defendant appeals.

Defendant's arguments for reversal may be grouped as follows: Insufficiency of the evidence to support the verdict; error in failing to instruct on the issue of contributory negligence; error in instructing on the doctrine of res ipsa loquitur, and erroneous instruction thereon; error in failing to instruct the jury as requested by defendant setting forth his theory of the case. We consider these arguments seriatim.

We have reviewed the evidence and do not deem it necessary to set out the testimony more fully than in the factual statement above. Suffice it to say that there is evidence from which the jury could find that steam issued from the faucet when plaintiff turned on the hot water. Admittedly, there would have to be some defect in the water heating system for such a situation to occur. Defendant made no explanation of how such a thing could happen. The jury could, and apparently did, find

therefrom that defendant was negligent in the care and maintenance of the water heating system by allowing steam to generate or accumulate in the pipes. There is evidence to support the verdict and the first argument is determined against defendant.

Defendant argues that the trial court erred in failing to instruct the jury on the issue of contributory negligence. No request was made by defendant that the court instruct with respect to contributory negligence. Instead the defendant requested and the court gave instruction number 10 as follows:

"If you find from the evidence in this case that plaintiff sustained her injuries by reason of hot water drawn into the tub by her, and not by steam emitted from the faucet of said bath tub, then your verdict must be in favor of defendant, no cause of action."

In view of this instruction there was no occasion for giving instructions on contributory negligence. No contention is made that if the scalding and burning was done by steam emitted from the faucet or spout in the bath tub that plaintiff would be contributorily negligent. Plaintiff would not be charged with or under the duty of anticipating that steam might be present in the water lines and would not be turning on the taps at her own risk. Had the court permitted the jury to return a verdict for plaintiff on the ground that the burns were caused by hot water, the question as to whether she was negligent in letting enough hot water flow into the tub to scald and burn her as the evidence shows she was burned, would have been before the jury, the instructions as to negligence on her part contributing thereto would have been in order. But here where plaintiff's sole contention is that she was burned by steam, and there is no evidence from which it could be inferred that there was negligence on her part, if the burning was done by steam, and no request for an instruction on contributory negligence, the failure of the court to so instruct on its own motion is certainly not reversible error.

Defendant next argues that the giving of instruction number 13 was error. The court said:

"You are instructed that if you believe from the evidence that plaintiff opened the valve which controlled the flow of hot water into the mixing device and that steam issued therefrom in such quantities as to burn and scald her as testified to by her, then proof of such facts in the absence of explanation by the defendant, is sufficient to justify an inference or presumption of fact of negligence, requiring the defendant to explain the cause of the issuing of steam from the mixing device and the happening of the accident by sufficient evidence to overcome such inference or presumption of negligence or the want of due care on its part."

This was followed by No. 14, wherein the jury was told:

"While you may draw an inference as to negligence of the defendant in accordance with the preceding instruction, nevertheless the plaintiff is not thereby relieved from the burden of proving by a preponderance of the evidence that the defendant was negligent. That inference may be rejected by you, and, if so, rejected, or, if you believe from all of the evidence in the case that the defendant exercised due care, then your verdict should be for the defendant."

Defendant contends that this instruction is inapplicable because the evidence clearly shows that defendant was not in the exclusive possession and control of the water heating system—exclusive possession and control being one of the essential elements for an application of the res ipsa loquitur doctrine. The basis for this argument is the testimony of the building engineer that the water was heated by steam passing through coils in the tank or boiler and such steam was furnished to defendant by another concern. Defendant argues that such fact takes the case out of the scope of res ipsa loquitur because it did not have the exclusive possession and control of the heating system. A simple statement of fact will show the fallacy of this argument. The water heating plant was entirely on defendant's premises and entirely supervised and operated by its employees. If steam got into the water pipes it could come from only two sources —either it was generated within the boiler or the pipes themselves or some of the steam furnished for heating the

water leaked from the heating coils into the boiler and from there passed into the pipe. No claim was made that the company furnishing the steam had any duty of inspection or maintenance or control of the water heating system. Since that system was entirely on defendant's premises, we shall assume in the absence of showing to the contrary that the duty of inspection and maintenance was upon defendant and its employees. The negligence, if any, was theirs not that of the company furnishing the steam.

As to this instruction defendant also argues that because of the phrase "in the absence of explanation by defendant" the instruction is erroneous and prejudicial. It is argued that such phrase assumes that no explanation was made by defendant and that it thus misled the jury and caused them to ignore defendant's evidence. It may be admitted that the instruction is not a model of artistic craftsmanship and is somewhat cumbersome in language, but is it subject to the objection raised against it? We think that instruction as a whole would not be taken by the jury as a declaration that defendant had made no explanation but as meaning that it was the duty of defendant and not of plaintiff to explain how the steam got into the pipes. However, if the jury took the instruction as defendant argues it might have done, defendant could not be prejudiced thereby. It made no explanation. It made no attempt to explain how steam did or could get into the pipe. It denied absolutely and outright that there was any steam in the pipes, and all its testimony was to the effect that it was impossible for steam to be in the pipe. The instruction could not have led the jury to disregard defendant's evidence with respect to how steam could have gotten into the pipe because defendant offered no such evidence, but denied there was or could be steam in the pipe. It offered testimony that there might have been air in the pipe, but the court gave a positive instruction (number 10 noted above) that unless the jury found it was steam they must find for defendant. We fail to see how this instruction could have misled the jury.

Defendant's final argument is that it was error to refuse its request number 7, arguing that thereby the court failed and refused to submit defendant's theory of the case to the jury. From an examination of the instructions as a whole, we conclude that the court did, in effect, give the jury the law as sought to be covered by the request as far as it pertained to the case at issue. The request, while embracing a theory of defense which would have been admissible under the pleadings, does not reflect the defendant's theory of the case as developed in the evidence and found in the record. In fact the trial court gave an instruction much stronger for defendant than this request. The request was to the effect that if the jury found the water coming from the tap was hotter at the time of drawing the rinse water than at the time of drawing the water for the bath, plaintiff could not recover unless it appeared that defendant did something to cause that change in temperature. The court did instruct that plaintiff could not recover if the burning and scalding was caused by water, regardless of its temperature, or cause of its being too hot, and limited plaintiff's right to recover to the single ground that it was steam and not overheated water that caused the injury. We see no ground for defendant to complain because the request was not granted.

Finding no reversible error, the judgment is affirmed. Costs to the respondent.

McDONOUGH, TURNER, and WADE, JJ., concur.

WOLFE, Justice (concurring).

I concur. I think, however, that the reference by Mr. Chief Justice LARSON to a duty on the part of the defendant to explain how steam got into the pipes, needs further amplification. There was no duty on the part of the defendant to explain how steam got into the pipes unless the plaintiff first proved, at least prima facie, that there was steam in the pipes. When the plaintiff testified that steam came out of the water spout, she did not make out negligence

except as the doctrine of res ipsa loquitur would make out negligence for her. After she so testified, the defendant could take either or both of two stands: (1) It could attempt to prove that no steam came out of the spout and thus destroy the basis for the application of the doctrine of res ipsa loquitur, so that that doctrine would never come into play; or (2) it could attempt to show or explain how steam could be present in the pipes and issue from the water spout without negligence on the part of the defendant, and thus rebut any presumption of negligence raised by the doctrine of res ipsa loquitur. When the plaintiff succeeded in showing, at least prima facie, that steam did come out, the burden swung to the defendant to explain how it could come out without defendant being negligent. The burden of proving that steam came out of the spout was on the plaintiff at all times. Plaintiff had to prove this by a preponderance of the evidence. But having offered evidence from which the jury could and did believe that steam came out, the burden was on the defendant to explain how steam could come out without defendant being negligent. If defendant did not care, or was unable, to meet this burden, the jury could infer negligence. In this sense the duty to explain was on defendant.